IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| HAROLD RAVEN | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:21cv404 |
| GREGG COUNTY SHERIFF'S DEPARTMENT, ET AL. | § | |

### INITIAL REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Harold Raven, a former inmate of the Gregg County Jail in Longview, Texas proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are the Gregg County Sheriff's Department, Sheriff Maxey Cerliano, Dr. Gary White, Nurse Trelia Garvin, and jail officials Josh Tubb and Steven Stadt.

**I. The Plaintiff's Complaint**

Plaintiff's amended complaint (docket no. 7) is the operative pleading in the lawsuit. In his amended complaint, Plaintiff states that on August 23, 2020, he slipped and fell in a large puddle of water, because the shower leaked and the drain was stopped up. He says that Sheriff Cerliano "is the key target in the lawsuit, being as he is the head over the Gregg County Jail. There is more 'racialism' inside these walls and not meeting protocol."

Plaintiff states that Dr. White "was a witness to what happened and did not call paramedics. And waiting a month later 9-18-20 to order MRI or X-rays taken and was aware of the full extent of my injuries." He concedes that Nurse Garvin "was involved and followed protocol properly, but was a witness in my case nonetheless."

Next, Plaintiff states that Lt. Josh Tubb was made aware of his injuries through several "extinguished [sic] grievance attempts" that were all exhausted, and Sgt. Steven Stadt was assigned to investigate the case but "never returned any feedback on my behalf." For relief, Plaintiff asks for $5 million in financial compensation as well as physical therapy and aftercare.

## II. Discussion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees and identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts that, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. Montoya v. FedEx Ground Packaging System Inc., 614 F.3d 145, 149 (5th Cir. 2010), *citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Hershey v. Energy Transfer Partners, L.P., 610 F.3d 239, 245 (5th Cir. 2010); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). This plausibility standard is not akin to a probability requirement, but asks for more than a possibility that the defendant has acted unlawfully. Twombly, 550 U.S. at 556.

Detailed factual allegations are not required, but the claim must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 677-78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Id. at 678.

A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability, or if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. Rios v. City of Del Rio, Tex., 444 F.3d 417, 421 (5th Cir. 2006). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. Chhim v. University of Texas at Austin, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010), *citing* Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. Rios, 444 F.3d at 421.

The Fifth Circuit has explained that while *pro se* complaints are construed liberally, the court is still bound by the allegations of the complaint and is not free to speculate that the plaintiff "might" be able to state a claim if given yet another opportunity to amend the complaint. Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). The court explained as follows:

> For example, if an IFP plaintiff, in amending his complaint through a response to a questionnaire, alleges in his response that he received inadequate medical care while incarcerated, we should not reverse the dismissal of the complaint on the basis that the plaintiff could possibly add facts that would demonstrate that he was treated with deliberate indifference in the medical care that he received. As another example, if an IFP prisoner asserts in the questionnaire response that he has been denied recreation time, we should not reverse dismissal on the ground that he might also be able to assert a claim that the denial was in retaliation for his having filed a grievance.

*Id*. at 97.

The Fifth Circuit has held deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). In order to show deliberate indifference, the prisoner must show (1) objective exposure to a substantial risk of serious harm, (2) the defendants had subjective knowledge of this substantial risk, (3) the defendants denied or delayed the prisoner's medical treatment despite their knowledge of this substantial risk, and (4) this denial of or delay in treatment resulted in substantial harm. Petzold v. Rostollan, 946 F.3d 242, 249 (5th Cir. 2019).

Disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference. Id.; *see also* Gobert v. Caldwell, 463 F.3d 339, 345-46 (5th Cir. 2006), *citing* Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

Claims of negligence, medical malpractice, or that the treatment provided has not been as successful as the plaintiff would have liked are insufficient to set forth constitutional violations. Gobert, 463 F.3d at 346; Norton, 122 F.3d at 291. Likewise, the fact medical care given is not the best that money can buy, or that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992).

The Fifth Circuit has held a prisoner who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a prisoner expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination. The prisoner committed suicide two and a half hours later. The Fifth Circuit, in denying a motion for summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Plaintiff contends that Dr. White did not call paramedics and waited a month before ordering MRI's and X-rays despite being aware of the extent of Plaintiff's injuries. While it may be a close question, the Court has determined that these allegations are sufficient to survive initial screening. *See, e.g.*, Valdez v. Esparza, civil action no. EP-21-cv-275, 2022 WL 304981 (W.D.Tex., February 2, 2022) (noting the "low bar for screening pursuant to 28 U.S.C. §1915A").

Plaintiff states that Sheriff Maxey Cerliano is the head of the Gregg County Jail, adding that "there is more 'racialism' inside these walls and not meeting protocol." As a supervisory official in charge of the jail, Sheriff Cerliano is not vicariously liable under §1983 under any theory of supervisory liability for any actions or omissions by his employees. Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 419 (5th Cir. 2017); *see also* Iqbal, 556 U.S. at 676 (government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*).

Instead, a supervisor may be held liable if he affirmatively participates in the acts causing a constitutional deprivation or implements unconstitutional policies which causally result in the constitutional injury. Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011). Plaintiff has not alleged any facts showing that Sheriff Cerliano affirmatively participated in acts causing a constitutional deprivation or implemented unconstitutional policies or customs resulting in a constitutional injury.

*See* Spiller v. City of Texas City, Texas Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (in order to satisfy the cause in fact requirement, the plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue or that his injuries resulted from the execution of the policy or custom; the description of the policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts). Plaintiff offers no specific facts concerning any alleged policies or customs, nor how these may have led to an alleged constitutional deprivation. His allegations that Sheriff Cerliano was not operating the jail to meet protocol and that "there is more 'racialism' inside these walls" are simply "unadorned, the-defendant-unlawfully-harmed-me accusations" consisting of naked assertions devoid of further factual enhancement. Plaintiff has not stated a claim upon which relief may be granted against Sheriff Cerliano.

Plaintiff names the Gregg County Sheriff's Department as a defendant, but does not set out any claims against the Department. In any event, the Gregg County Sheriff's Department is a sub-unit of Gregg County and has no separate legal existence apart from the county. As such, the Gregg County Sheriff's Department cannot be sued in its own name unless Gregg County has taken explicit steps to grant the Sheriff's Department jural authority. Darby v. Pasadena Police Department, 939 F.2d 311, 313 (5th Cir. 1991). Plaintiff does not allege, much less show, that Gregg County has done so, meaning that the Sheriff's Department cannot engage in any litigation except in concert with the county itself. Id.; *see also* Lancaster v. Harris County, 821 F.App'x 267, 2020 U.S. App. LEXIS 21440 (5th Cir., July 10, 2020); Goodnight v. Rains County Sheriff's Department, civil action no. 6:13cv96, 2013 U.S. Dist. LEXIS 80946, 2013 WL 2551879 (E.D.Tex., June 10, 2013). Because the Gregg County Sheriff's Department has no separate jural existence and is not a suable entity, Plaintiff has failed to state a claim upon which relief may be granted against it.

Plaintiff contends that Lt. Tubb was made aware of the incident through the grievance procedure and Sgt. Stadt was assigned to investigate, but apparently neither of these officials took action which Plaintiff believed appropriate. The Fifth Circuit has stated that prisoners do not have

6

a constitutional right or protected liberty interest in having grievances resolved or investigated to their satisfaction. Alexander v. TDCJ, 951 F.3d 236, 240 (5th Cir. 2020), *citing* Geiger v. Jower, 404 F.3d 371, 374 (5th Cir. 2005); Morris v. Cross, 476 F.App'x 783, 2012 U.S. App. LEXIS 9103, 2012 WL 1557341 (5th Cir., May 3, 2012) (rejecting claim that the failure to conduct an adequate investigation into prisoner's grievance implicates due process because the prisoner "lacks a protected interest in a favorable resolution to his grievances," citing Geiger, 404 F.3d at 374). Plaintiff has failed to state a claim upon which relief may be granted against Lt. Tubb and Sgt. Stadt.

Finally, Plaintiff names Nurse Garvin, but says that she followed protocol properly. He indicates that he named her simply because she is a witness, not because she did anything wrong. As such, he has failed to state a claim upon which relief may be granted against her. Turner v. Lieutenant Driver, 848 F.3d 678, 695-96 (5th Cir. 2017).

RECOMMENDATION

It is accordingly recommended that the above-styled civil action be dismissed without prejudice for failure to state a claim upon which relief may be granted as to all of the named Defendants except for Dr. White. 28 U.S.C. §1915A.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 8th day of March, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE