IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| HAROLD RAVEN | § | |
| v. | § | CIVIL ACTION NO. 6:21cv404 |
| GREGG COUNTY SHERIFF'S DEPARTMENT, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
ON DEFENDANT DR. WHITE'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff Harold Raven, a former inmate of the Gregg County Jail proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the jail. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. This Report concerns the motion for summary judgment filed by the Defendant Dr. Gary White.

**I. The Plaintiff's Complaint**

Plaintiff's amended complaint (docket no. 7) is the operative pleading in the lawsuit. In his amended complaint, Plaintiff states that on August 23, 2020, he slipped and fell in a large puddle of water which came from a stopped-up drain. There were no caution or wet floor signs present. He says that his claim against Dr. White is for "lack of medical treatment resulting in permanent injuries" and his factual allegations against Dr. White read, in their entirety, as follows: "Dr. Gary White, the doctor here in Gregg County Jail, was a witness to what happened and did not call paramedics. And waiting a month later 9-18-20 to order MRI or X-rays taken and was aware of the full extent of my injuries."

## II. The Defendant's Motion for Summary Judgment and the Response

Dr. White has filed a motion for summary judgment based upon failure to exhaust administrative remedies. This motion asserts that while Plaintiff filed several grievances about his medical care, none of these were timely, and he did not pursue all of the steps of the grievance procedure with regard to the specific claims he is raising against Dr. White.

Plaintiff has filed a response to the motion for summary judgment which says that he wants to correct errors in his pleadings, the Defendant's motion for summary judgment does not include a certificate of conference, and the font and spacing of the Defendant's motion for summary judgment is incorrect. Plaintiff also asserts that the Defendant's motion for summary judgment is not specific and is not adequately pleaded, and the motion does not specify "what particular summary judgment [the Defendant] moves for relief under." He attaches documents including excerpts from a set of local rules which appear to be the Local Rules of Court for the Northern District of Texas, setting out requirements for a certificate of conference, and two lists of cases ranging in date from 1937 to 1981, none of which involve inmate litigation or exhaustion of administrative remedies.

## III. The Summary Judgment Evidence

Dr. White provides an affidavit from jail captain Jeff Callaway stating that under the Gregg County grievance procedure, an inmate has seven days in which to file a grievance. The grievance officer reviews the grievance and determines an appropriate action, and a written response is provided to the inmate within 15 days. There are three appeal steps - the first is to the facility lieutenant, the second is to the jail administrator, and the third is to the Sheriff, whose decision is final.

Dr. White also attaches copies of Plaintiff's grievance file. This file shows that on September 4, 2020, Plaintiff filed a grievance asking for the event case number of his slip and fall injury, saying that his injuries have become worse. He also mentions his court date and a lawyer visit, and says that he needs to talk to Internal Affairs. The response to this grievance states "you

fell 8/23/2020. You are being treated by medical." (Docket no. 28-2, p. 23). None of Plaintiff's grievances were appealed except for the one filed June 9, 2021, which will be discussed below.

On September 9, 2020, Plaintiff filed a grievance saying that he will file a civil action on racism of the ranking officers and jailers. He was in a slip and fall and his injuries have become worse over the past three weeks. The response to this grievance said that Plaintiff said there were no racial slurs and that his issue is with the jailers' body language and that they are not nice to him. (Docket no. 28-2, p. 24).

On September 16, 2020, Plaintiff filed a grievance asking what is the problem when it comes to seeing a neurosurgeon, an orthopedist, and getting an MRI. He says that the hospital is right across the street and asks "is it that Dr. White doesn't want to sign off on it?" He says that Gregg County is liable for the injuries he suffered in August. The response to this grievance, dated September 22, 2020, says that Plaintiff has been receiving medical attention, the medical staff and doctors make decisions concerning care, and "we cannot overrule a decision our medical doctor makes." (Docket no. 28-2, p. 3).

On October 6, 2020, Plaintiff says that he has been writing "I-60 after I-60 after I-60" pertaining to Dr. White and his staff since September 23, 2020, about his back injuries. He says that he needs an orthopedic opinion as well as therapy, and he is trying to see what the problem is about getting some medical attention. The response to this grievance, dated October 9, 2020, says that "we have received a report and placed you on the provider list." (Docket no. 28-2, p. 4).

On October 15, 2020, Plaintiff filed a grievance saying that he has asked Dr. White and his staff repeatedly about seeing a neurosurgeon and an orthopedist as well as getting physical therapy. He says that he has addressed the issue of his upper and lower back and knees and told him that his pain has become worse over the past few weeks, and he would like to address the matter to Internal Affairs. The response to this grievance says that all medical decisions and appointments to see outside physicians are made at the request of the medical staff and the jail personnel cannot overrule

3

any decisions which Dr. White and the medical staff have made regarding his medical care. If he needs further medical attention, he needs to speak to Dr. White. (Docket no. 28-2, p. 5).

On October 16, 2020, Plaintiff filed a grievance complaining about a nurse named Ms. Batson, saying that she is making sure Dr. White does not get his request forms and may be signing other nurses' names. He said that she also told the officers that Plaintiff did not need a wheelchair and told him to walk back on his own. The response to this grievance says that Officer Freer is forwarding the grievance to Nurse Garvin. (Docket no. 28-2, p. 25). The next day, Plaintiff filed another grievance about Nurse Batson, and the response from Nurse Garvin stated that Dr. White does not address request forms and that the nurses notify him if there is a problem, that Plaintiff has been scheduled for an MRI, and that Nurse Garvin would let the nursing staff know of his need of a wheelchair for transport. (Docket no. 28-2, p. 27).

On October 30, 2020, Plaintiff filed a grievance asking to speak to Captain Whitehead because of the conditions of the cell in which he was housed. The response stated that they had spoken on November 3 and that if Plaintiff needed to speak to him again, he should ask again.

That same day, October 30, Plaintiff filed another grievance asking to speak to captain Whitehead complaining about having been moved to B Dorm. The response from Captain Whitehead stated that he had a long conversation with Plaintiff about the issue, and that Plaintiff had been put in B Dorm because if an inmate leaves the facility for any reason, he must be put in quarantine upon his return. The response also said that Plaintiff had a bottom bunk and if he had any more issues, to let the captain know.

On October 31, 2020, Plaintiff filed a grievance about a PR bond. On November 6, 2020, Plaintiff filed a grievance asking about pain medication. The response stated "ibu[profen] 400 mg."

On November 8, 2020, Plaintiff filed a grievance asking to go to the emergency room because his head, back, and legs have great pain. He is having a hard time walking, but was denied by Nurse Miller, who told him on November 7 that Dr. White refused to call the paramedics. The

response to this grievance says "already addressed. Your pain med has been increased." (Docket no. 28-2, p. 6).

On November 9, 2020, Plaintiff filed a grievance saying that he has been complaining about pain and asking to go to the emergency room or the local hospital, but he was told that Dr. White had refused this request and had told Nurse Miller not to call the paramedics. The response to this grievance stated "these have been addressed by PA and MD." (Docket no. 28-2, p. 7).

That same day, November 9, Plaintiff filed a grievance about Dr. Kraig Dekoker signing off on his injury. He asks about Dr. Ogunseinde's prescription for injections and 15 weeks of physical therapy. The response says this has been addressed in previous requests.

On November 22, 2020, Plaintiff filed another grievance which reads "Dr. Gary White would write I Mr. Raven a letter with you have not sign off for I Mr. Raven seeing a neurosurgeon along [sic] physical therapy. I feel you're [violating] my 8 Amendment rights, sir, explain within a letter or a copy of your medical handbook." The response to this grievance, from Dr. White, says "Mr. Raven - you saw Dr. Ogunseinde with an orthopedic specialist. He felt that you did not need to see a neurosurgeon. He suggested physical therapy and pain management. Kraig Dekoker contacted Dr. Ogunseinde to find that you could do physical therapy in your cell with exercises you were shown. Pain management at this time can be addressed by meds we have on hand." (Docket no. 28-2, p. 8).

On November 22, 2020, Plaintiff filed a grievance saying that he is having headaches and back pain and is having a hard time walking. He said that he needed to be seen by a neurosurgeon along with physical therapy, and asked Dr. White what is the problem, why hasn't he signed off on this. The response to this grievance refers Plaintiff to the previous grievance response. (Docket no. 28-2, p. 9).

On November 27, 2020, Plaintiff filed a grievance asking Dr. White to write him a letter telling him why he, the doctor, has not signed off for Plaintiff to be seen by a neurosurgeon due to

5

his head injury, and for 15 weeks of physical therapy as ordered by Dr. Ogunseinde. The response, signed by a nurse, says "Dr. White has addressed this." (Docket no. 28-2, p. 10).

Plaintiff filed another grievance on November 27, 2020, asking to be seen by a neurosurgeon and saying that he needs physical therapy as soon as possible. He said "I do have a case number, am I correct, Dr. White, what is the problem?" The response to this grievance, signed by a nurse, says "Dr. White addressed this." (Docket no. 28-2, p. 11).

On December 7, 2020, Plaintiff filed a grievance complaining that Nurse Miller had been very disrespectful to him. The response, from Nurse Garvin, stated that she would speak to Nurse Miller about it.

On December 15, 2020, Plaintiff filed a grievance saying that he had been complaining about his headaches, back pain, and walking since August, and he needs to be seen by a neurosurgeon and get physical therapy. The response to this grievance says "we will put you on list to see MD." (Docket no. 28-2. p. 12).

On June 9, 2021, Plaintiff filed a grievance describing the incident and saying he is now wearing a back brace and neck brace. He said that Gregg County officials took him to the open image clinic on September 18, 2020, and then took him to see a specialist at the Longview Orthopedic Clinic on October 23, 2020. The specialist said that Plaintiff needed injections and 15 weeks of physical therapy, but the Gregg County doctor denied these. Plaintiff cites a Ninth Circuit case from 1992 saying that the failure to treat a prisoner's condition which could result in further significant injury or the unnecessary and wanton infliction of pain. The response to this grievance said that Plaintiff has visited the county doctor and county physician's assistant multiple times and he is still being monitored. As for the injections and therapy, the jail staff does not question the steps taken by qualified medical professionals, and Dr. White deems that injections and therapy are not needed at this time. (Docket no. 28-2, pp. 13-14).

A grievance appeal dated June 13, 2021 simply says "I do not agree with answer from original grievance on 6/09/2021 at 9:41 a.m. This is my first appeal on original grievance." The

response stated "I have reviewed your original complaint and looked into this. I find that the first response you received was correct." (Docket no. 28-2, p. 15).

On June 21, 2021, Plaintiff filed a second appeal saying "I do not agree with Dr. White. I'm in pain and it is getting worse every day. I need physical therapy and after care. This is my second APPEAL from 6-9-21 I do disagree. Thank you in advance." The response stated "you have received treatment as per our doctor's orders. The Gregg County Sheriff's Department does not question the professional opinion of medical personnel." (Docket no. 28-2, p. 16).

On June 24, 2021, Plaintiff filed a grievance appeal stating "grievances on Gregg County Jail and Dr. Gary White. I do not agree with the answer from original 6/9/2021 at 9:41 a.m. This is my 3rd appeal on the original grievances." The response stated "Mr. Raven, your request from that date was not a grievance. Feel free to submit a grievance and the type of grievance. Thanks." (Docket no. 28-2, p. 17).

On July 9, 2021, Plaintiff filed a grievance saying that under state and federal law, he is asking for assistance to get an accident insurance claim from the Sheriff's Department insurance carrier. He said that the slip and fall left him with a golf ball size knot on the back of his head and he now wears a neck brace and back brace and is using a wheelchair. He needs to see a specialist but has been denied numerous times, and he needs physical therapy. The response to this grievance says that inmates do not have access to open records and the jail staff is following Dr. White's orders. (Docket no. 28-2, p. 19).

On July 31, 2021, Plaintiff filed a grievance saying that he knows the primary insurance holder for Gregg County is responsible for the injuries which Plaintiff suffered on August 21 and May 5, 2021, which left him with a golf ball sized knot on the back of his head as well as bulging discs in his neck and spinal canal. Plaintiff appears to quote from medical records saying that stenosis is suspected, the thecal sac [i.e. the layer that protects the spinal cord] is estimated at 8.5 mm AP, and there appears to be severing of the spinal canal with cord flattening. Plaintiff states that this has caused an impact on his mobility and left him in a wheelchair, which was not the case before

he went to jail. He stated that he needs aftercare rehabilitation along with physical therapy, and that Gregg County is responsible for the accident. The response to this grievance says that Officer Steven Stadt spoke to Plaintiff on July 2 about this complaint. Stadt spoke to the medical supervisors, who told him that Plaintiff would be placed on the doctors list so that Plaintiff could talk to the doctor about the rehabilitation and physical therapy he is requesting. The response said "please mention this when you see the doctor and you should receive clarity on the situation. Thanks." (Docket no. 28-2, p. 21).

The Plaintiff's original complaint includes copies of grievances which he filed, which are duplicates of grievances contained in the Defendant's motion for summary judgment.

**IV. Discussion**

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997e, which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. Jones v. Bock, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules. Woodford v. Ngo, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This requirement means that mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir. 2010).

All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. Johnson, 385 F.3d at 515. As a general rule, new issues should not be presented in an appeal of a grievance which were not presented in the original. Randle v. Woods, 299 F.App'x 466, 2008 U.S. App. LEXIS 24138, 2008 WL 4933754 (5th Cir., November 19, 2008),

*citing* Woodford, 548 U.S. at 92- 93. Furthermore, the district court may not excuse failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison Litigation Reform Act, even to take "special circumstances" into account. Ross v. Blake, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016).

The Fifth Circuit has stated that the exhaustion requirement must be interpreted in light of its purposes, which include the goal of giving prison officials "time and opportunity to address complaints internally." Johnson, 385 F.3d at 516, *citing* Porter v. Nussle, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Thus, a grievance is considered sufficient to the extent it "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." Johnson, 385 F.3d at 517.

The summary judgment evidence shows that the Gregg County Jail has a grievance procedure consisting of an original grievance and a three-step appeal process - to the facility lieutenant, the jail administrator, and the Sheriff. Of the grievances filed by Plaintiff, the summary judgment evidence shows that he attempted to use all three steps on only one grievance, the one which he filed on June 9, 2021. Although the Defendants argue that this grievance was untimely, this procedural argument lacks merit because the grievance was not rejected as untimely, but answered on the merits. Gates v. Cook, 376 F.3d 323, 331 & n.6 (5th Cir. 2004).

The June 9, 2021 grievance reads, in its entirety, as follows:

I am writing this according to the 28 U.S.C. 1983, I was placed in the Gregg County Jail on August 17th, 2020. In only a matter of 3 days on 20th of August I fell in the alpha cell on the 4th floor during the lunch hour. I was walking to retrieve my lunch tray, and fell because of the shower which leaks water on the floor after every shower. There is no caution signs or anything warning of the threat of a fall due to wet floor. This shower and other showers throughout the jail leak water on the floor.

I am now forced to wear a neck brace to keep my spine in aligned [sic]. Also am now wearing a back brace to try to keep from being in pain. Nurse Miller typed the incident report and ordered the X-rays to my knowledge, and Nurse Smith gave me a pack of ice. Gregg County officials took me to see the open image clinic on 9-18-20 and then took me to see a specialist at the Longview orthopedic Clinic on October 23, 2020. The specialist stated I need injections and 15 weeks of physical therapy. The Gregg County dr. denied the specialist prescriptions of injections and therapy.

> It says in case law McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) that failure to treat a prisoner's condition that could result in further significant injury or the unnecessary and wanton infliction of pain ... the existence of an injury that a reasonable doctor or patent would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic pain and substantial pain. Can I please get the treatment the specialist ordered in the next 7 days as outlined in the grievance procedure process in the inmate handbook. My pain is substantial and on a daily basis I'm constantly in pain. Thank you in advance.

As noted above, the response to this grievance stated that Plaintiff has visited with the county doctor and physician's assistant multiple times and is still being monitored, and Dr. White deems that injections and therapy are not needed at this time.

Plaintiff's first appeal, dated June 13, 2021, simply says that he did not agree with the answer. The response says that the first response he received was correct.

Plaintiff's second appeal, dated June 21, 2021, said that he did not agree with Dr. White, his pain is getting worse every day, and he needs physical therapy and aftercare. The response to this grievance said that he has received treatment per doctor's orders.

The third appeal, dated June 24, 2021, reads "grievances on Gregg County Jail and Dr. Gary White. I do not agree with the answer from original 6/9/2021 at 9:41 a.m., this is my 3rd appeal on the original grievances." The response to this grievance reads "Mr. Raven, your request from that date was not a grievance, feel free to submit a grievance and the type of grievance, thanks."

The Court will assume, without deciding, that in filing three appeals of this grievance, Plaintiff presented his claims through the grievance procedure to the fullest extent that he was able to do so. However, this grievance does not serve to exhaust Plaintiff's administrative remedies because it did not give the jail officials a fair opportunity to resolve the issues forming the basis of the lawsuit. Plaintiff's amended complaint asserts that Dr. White was a witness to what happened and did not call paramedics, and then waited a month to order an MRI or X-rays; however, his grievance complains about Dr. White's failure to provide the injections and therapy which Plaintiff says that the specialist had ordered. Several courts have held that an inmate cannot pursue a claim under §1983 when he fails to adequately describe it through the grievance procedure, even though

he set out the basis of another claim. *See* Johnson, 385 F.3d at 518 (grievance complaining about prison conditions did not exhaust an equal protection claim); *accord*, Pearson v. Taylor, 665 F.App'x 858, 2016 U.S. App. LEXIS 22635, 2916 WL 7367785 (11th Cir. 2016) (grievance alleging excessive force by an officer did not exhaust deliberate indifference to medical needs claims against warden and deputy wardens); Burns v. Eaton, 752 F.3d 1136, 1141 (8th Cir. 2014) (grievance complaining of being pepper-sprayed by one officer did not exhaust claim that another officer delayed turning on the shower to allow prisoner to wash it off); Stone v. Albert, 257 F.App'x 96, 2007 U.S. App. LEXIS 27945, 2007 WL 4230702 (10th Cir. 2007) (grievance which alleged inadequate medical care did not exhaust a claim for excessive force).  Because Plaintiff's grievance did not give the jail officials an adequate opportunity to address the claim set out in his lawsuit, he did not exhaust his administrative remedies, and Dr. White's motion for summary judgment is meritorious.

Although Plaintiff complains that the Defendant's motion for summary judgment did not include a certificate of conference, the Local Rules of Court for the Eastern District of Texas specify that the "meet and confer" and "certificate of conference" requirements do not apply to *pro se* litigants or to motions for summary judgment. *See* Local Rule CV-7(i). Plaintiff also asserts that the Federal Rules of Civil Procedure require that motions be double-spaced with a font of 11 pica and printed in Times New Roman; however, neither the Federal Rules of Civil Procedure nor the Local Rules of Court for the Eastern District of Texas contain such a requirement.  Local Rule CV-10 requires only that pleadings be double-spaced and in a font no smaller than 12 point type, and the Defendant's motion plainly meets this requirement.  Plaintiff's contention that the Defendant's motion is "not specific" and "not adequately pleaded" likewise lacks merit.

## V. Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Burleson v. Texas Department of Criminal Justice, 393 F.3d 577, 589 (5th Cir. 2004). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. Id., *citing* Allen v. Rapides Parish School Board, 204 F.3d 619, 621 (5th Cir. 2000).

The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. Boudreaux v. Swift Transportation Co., Inc., 402 F.3d 536, 540 (5th Cir. 2005); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Prison Legal News v. Livingston, 683 F.3d 201, 211 (5th Cir. 2012).

The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. Adams v. Traveler's Indemnity Co., 465 F.3d 156, 164 (5th Cir. 2008). Instead, a party opposing summary judgment must identify specific evidence in the record that supports the challenged claims and articulate the precise manner in which that evidence supports the challenged claim. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A review of the pleadings and summary judgment evidence in this case shows that there are no disputed issues of material fact and the Defendant Dr. White is entitled to judgment as a matter of law because the Plaintiff Harold Raven did not exhaust his administrative remedies. Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (holding that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion

is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.") Because Plaintiff did not exhaust his administrative remedies, his claims against Dr. White should be dismissed without prejudice. Bargher v. White, 928 F.3d 439, 447 (5th Cir. 2019).

## RECOMMENDATION

It is accordingly recommended that the Defendant's motion for summary judgment on the issue of exhaustion of administrative remedies (docket no. 28) be granted and the Plaintiff's claims against Dr. White be dismissed without prejudice for failure to exhaust administrative remedies.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. See Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 23rd day of August, 2022.**

13

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE